Ralph Noe, Plaintiff-Appellant, v. Chicago Great Western Railway Company, a Corporation, Defendant-Appellee.

Gen. No. 49,214.

First District, Third Division.

December 9, 1965.

Supplemental Opinion April 28, 1966.

James A. Dooley and Clare J. Murphy, of Chicago, for appellant.

Winston, Strawn, Smith & Patterson, of Chicago (Edward J. Wendrow and R. Lawrence Storms, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment for the defendant in a case involving injuries to person and property sustained in a grade crossing collision in Iowa on September 21, 1953, between a crane driven by the plaintiff and a train operated by the defendant. The claim is based on two counts—common-law negligence, on which the jury found for the defendant, and a violation of the Federal Safety Appliance Act, on which the trial court directed a verdict for the defendant at the close of plaintiff's evidence. The principal issue on appeal is whether the court properly excluded expert testimony as to the efficiency of the train's brakes. As the plaintiff also charges that the verdict is against the manifest weight of the evidence, an adequate statement of facts must be presented.

Plaintiff was an operator of heavy equipment and had been working with a crane at the Dubuque Sand and Gravel Pit. The crane weighed 25 to 30 tons and from the front of it there extended a 42–foot boom. It was self-propelled by a caterpillar-type system with a maximum speed of *two miles per hour*. Plaintiff planned to move the crane from the gravel pit to another job

site and had engaged a truck designed to carry heavy equipment. The pit was separated from a nearby highway by the defendant's railway track, and a private road connected the pit with the highway. Owing to the steepness of the grade and the low clearance of the truck, it was decided to drive the crane under its own power across the grade crossing to the highway. A provision of the Motor Vehicle Act of the State of Iowa required that vehicles of this character having a normal speed of six or less miles per hour may not be operated across a railroad grade crossing without notice first being given to a superintendent of the railroad in time for the railroad "to provide proper protection at such crossing." No effort was made by plaintiff to give notice to any agent of the railroad, although there was a local train dispatcher in a nearby office. The Act also required a person operating such a vehicle to stop between 10 and 50 feet from the nearest rail and look and listen for an approaching train. Iowa Code Ann § 321.344.

At 5:00 a. m. on the morning of the accident, the plaintiff met the driver of the truck, John Reisdorf, at a restaurant about two miles from the gravel pit, stayed there 20 or 25 minutes, and then went to a point near the highway side of the track, where Reisdorf remained in his truck while the plaintiff went to the pit.

On the vehicle was a cab painted "highway yellow" which had a seat for the operator in the front on the right side. The cab had ample windows in front and on both sides and in addition there was a door on the left side which was open that morning. The boom, which was painted black, had been lowered to a point 10 to 15 feet off the ground, as was customary during travel in order to give better vision and balance. Right behind the operator in the cab was the motor, which made so much noise that the operator could not hear the sound of a

train in motion, although the plaintiff testified that on other occasions he had been able to hear train whistles. There were no lights anywhere on the crane.

The plaintiff testified that he stopped the crane at a point on the private roadway with the cab 50 feet from the crossing, looked both ways, saw nothing approaching and started across at the full speed of two miles an hour. At that speed it took about 17 or 18 seconds to traverse the 50 feet to the crossing. Plaintiff testified *that he did not look to the left again,* and did not know whether the train whistled or rang its bell. He said that all but eight inches of the rear end of the crane had cleared the track when the train coming from the left side hit the crane.

Reisdorf, the driver of the truck, testified that he remained in his parked truck on the highway side of the tracks with his view of the tracks largely obstructed by a billboard and that he first became aware of the train when it hit the crane. Plaintiff had not asked him to observe the tracks or flag down trains.

Crew members of defendant's train testified that the train's brakes had been satisfactorily tested minutes before the accident, the whistle had been blown at a whistling post 2,000 feet from the crossing, the fixed and the oscillating headlights were on, illuminating the track for 1,000 feet, and the automatic bell ringer was on. A quarter mile or better from the crossing, proceeding 35 to 40 miles an hour, the engineer saw something on the track, quickly made out that it was a boom, set the brake in emergency, and continuously sounded the whistle. At impact the train had slowed to five miles an hour.

The engineer testified that when he asked if plaintiff had not seen the train's headlights, plaintiff replied that he "didn't look" and that he had never seen a train along there at that time of the morning. The conductor

351

testified that in response to another question by the engineer, plaintiff said he had not heard the whistle because the machine made so much racket that he could not hear anything. Another employee of the defendant who happened along after the collision testified that plaintiff asked *"how come they run a train at that time of day?"*

██ Plaintiff undertook to establish negligence by showing a violation of the Federal Safety Appliance Act, a penal statute, violation of which is under Iowa law negligence per se. Meier v. Chicago, R. I. & P. Railway (Iowa), 275 NW 139, 142 (1937). The violation alleged was that the railroad had failed to equip its cars and engine with good and adequate brakes. Plaintiff offered the evidence of an expert witness that if the brakes had been operating efficiently and properly, the train would have stopped short of the crossing. This was proper evidence. Myers v. Reading Co., 331 US 477 (1947).

The witness, Clifford Moore, a retired railway engineer, offered his opinion, based upon assumed facts in a hypothetical question, that efficient brakes would have halted the train within 600 to 700 feet. The defendant's engineer had testified that the brakes had been applied about a quarter mile from the crossing. Nevertheless the trial court held that Moore was not qualified to testify as to defective brakes and sustained general objections to his testimony.

██ Moore testified that he had long years of railroad experience, having worked for the Nickel Plate Road and predecessor lines since 1922, first as a fireman and from 1941 to 1956 as an engineer. In Williams v. Mason City & Ft. D. Railway (Iowa), 214 NW 692 (1927) a farmer who was a former brakeman and conductor was allowed to testify under similar facts. Defendant cites Thompson v. Chicago & E. I. Ry. Co., 32 Ill App2d 397, 178 NE2d

352

151, a personal injury action under several federal acts, including the Safety Appliance Act. The plaintiff, a locomotive engineer with work experience similar to Moore's, was not permitted to answer two questions, to wit: "Now, what, if anything happens to the piston in an air cylinder when air is applied into that cylinder?" and "What is the relationship between amount of piston travel and amount of pressure that is applied on a brake shoe to a wheel?" The court, in sustaining the ruling of the trial court, said (p 403): "There is nothing in the record which suggests that plaintiff was competent to testify as to the technical aspects of the operation of air brakes. He recognized his lack of knowledge on the subject." The hypothetical question here in question did not explicitly call for such technical knowledge and there is nothing in the record on which it can be said that Moore "recognized his lack of knowledge of the subject." He was a qualified expert, and the court erred in holding otherwise.

■ Defendant contends that the hypothetical question put to Moore lacked many essential elements and on that ground objection was properly sustained. The question follows:

"Assume a train of a double unit diesel, traveling at 35 to 40 miles an hour, a mixed train that had been brake tested a mile or so before normal application, and assume the train had four freight cars and four passenger cars, and that an emergency application was made a quarter of a mile from a crossing and the train hit a crane at four to five miles an hour and proceeded to 50 to 100 feet beyond the crossing, how far in your opinion—as to the condition of the brakes of the train . . . do you have an opinion as to whether or not those brakes functioned properly?"

Putting a skeletal question of this character to an expert witness is certainly not good practice, but only a general

objection was made to it. The long established rule is that objections to hypothetical questions must specifically point out the elements the objector thinks should have been excluded or included. Clifford-Jacobs Forging Co. v. Industrial Commission, 19 Ill2d 236, 166 NE2d 582; Chicago Union Traction Co. v. Roberts, 229 Ill 481, 82 NE 401. The ruling of the court excluding Moore's testimony provided the basis for directing the verdict on the second or safety appliance count and was erroneous.

██ ██ Moore's testimony that properly working brakes would have stopped the train in time was also material to a determination of liability on the first count under the Iowa doctrine of last clear chance. This doctrine presupposes proof of plaintiff's contributory negligence and permits recovery notwithstanding where the defendant (1) has actual knowledge of plaintiff's situation; (2) realizes or should realize that he is in peril; and (3) having the ability to avoid injury to the plaintiff thereafter fails to do so. Tilghman v. Chicago & N. W. Ry. Co. (Iowa), 115 NW2d 165, 168 (1962) ; Vreugdenhil v. Kunkel (Iowa), 127 NW2d 630, 633–34 (1964). The doctrine is vital to plaintiff's case because there was overwhelming evidence of plaintiff's contributory negligence.

██ Plaintiff contends that the jury's verdict was against the manifest weight of the evidence on the issues of defendant's negligence and plaintiff's contributory negligence, arguing particularly that the grade crossing statute before referred to does not apply to private crossings such as the one here involved. He urges that the Motor Vehicle Act, which contains the provision in question, should be construed in pari materia with the Railroads Act, which uses the term "grade crossing" when referring to public as opposed to farm crossings. Iowa Code Ann §§ 478.12, 478.21, 478.28. This, he argues, is sound doctrine because railroads know that heavy,

slow-moving vehicles are the ordinary traffic at private crossings and therefore notice of such traffic is unneeded. But whether a roadway over a crossing has been dedicated to the public has no relation to what moves over it. The object of the statute is to protect all who use the crossing—the railroad, its passengers and personnel, as well as the operator of the vehicle—from the disastrous consequences which can occur when a high speed train hits a huge and cumbersome vehicle like the one in question. It is our conclusion that the statute applies to both public and private grade crossings.

■■ The defendant argues that plaintiff cannot invoke the last clear chance doctrine because his amended complaint made inconsistent charges that the defendant both failed to keep a proper lookout and knew of plaintiff's peril. He relies on the Iowa case of Reynolds v. Aller (Iowa), 284 NW 825, 828 (1939). However, this issue of pleading is a procedural question governed by the law of Illinois. See Mithen v. Jeffery, 259 Ill 372, 376, 102 NE 778. Section 43(2) of the Illinois Civil Practice Act provides that:

> "When a party is in doubt as to which of two or more statements of fact is true, he may, regardless of consistency, state them in the alternative or hypothetically in the same or different counts or defenses, whether legal or equitable. A bad alternative does not affect a good one." (Ill Rev Stats 1963, c 110, § 43(2).)

Moreover, since the defendant made no motion to strike and submitted instructions on the last clear chance issue, this contention must be considered as waived. Despite the very strong evidence of contributory negligence a new trial is necessary.

The judgment is reversed and the cause is remanded with directions to grant the motion for a new trial and

for such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

DEMPSEY, P. J. and SULLIVAN, J., concur.

SUPPLEMENTAL OPINION ON REHEARING.

Following our allowance of the petition for rehearing, we thoroughly reviewed the case and we are of the opinion that our original conclusion was correct. Defendant has urged us to consider that the testimony of the expert witness, Moore, as to the distance within which trains could be stopped if equipped with proper brakes, which we found was erroneously excluded, was some time later admitted into evidence, and for that reason we should reverse ourselves and affirm the judgment. We have examined the record and it now appears that this evidence in question was indeed admitted. We agree with defendant that plaintiff's brief and abstract were misleading on this point, but confusion enveloped the issue on the trial, as evidenced by an assertion made by defendant's counsel during closing arguments, that the evidence in question had not in fact been admitted. In this state of the record, the jury must likewise have been confused as to what it could properly consider. Moreover, as we hold in our opinion, it was error for the court to direct a verdict on the count charging a violation of the Safety Appliance Act.

The judgment stands reversed and the cause remanded, with directions to grant the motion for a new trial, and for such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

SULLIVAN, P. J. and DEMPSEY, J., concur.