Albert E. Arnold, Plaintiff-Appellee, v. H. W. Carpenter, d/b/a H. W. Carpenter Co., Defendant-Appellant.

Gen. No. 66–50.

Third District.

June 14, 1967.

Davis, Morgan & Witherall, of Peoria, for appellant.

Mathis, Sloan & Littler, of Peoria, for appellee.

CORYN, J.

This is an appeal by H. W. Carpenter, d/b/a H. W. Carpenter Co., defendant, from a judgment of the Circuit Court of Tazewell County entered on a jury verdict in the amount of $5,028.22 in favor of Albert E. Arnold, plaintiff, on his suit for breach of an oral employment contract. Defendant raises three issues on appeal, that is, (1) that the verdict is contrary to the manifest weight of the evidence, (2) that plaintiff failed to prove damages, and (3) that the court erred in refusing defendant's instructions 3 and 5.

Plaintiff's complaint alleged, inter alia, that in May, 1955, he and defendant entered an oral contract of employment whereby plaintiff was to run defendant's parts and service department for a starting salary of $75 per week, with a $5 increase in salary every six months and a yearly bonus equal to 15 percent of the net annual profit from the operation of the parts and service department. Plaintiff also alleged that he terminated his employment with defendant in April 1964, and that there was owing to him at that time by defendant substantial sums because of defendant's failure to fully pay him the 15 percent bonus during each of the years of his employment, plus $300 accrued vacation pay. Defendant's

answer admitted that plaintiff was employed by him from May 1955 to April 1964, but denied that defendant ever agreed to give plaintiff a $5 raise in salary every six months, or an annual bonus of 15 percent of the net profits from the parts and service department.

The evidence regarding the terms of the oral contract of employment necessarily came from the testimony of the litigants, was conflicting, and generally adhered to the allegations of each party's pleadings. However, it appears to be undisputed that the following weekly pay increases were made:

| | |
|---|---|
| June 1955 | $75.00 |
| December 1955 | 80.00 |
| June 1956 | 85.00 |
| December 1956 | 90.00 |
| June 1957 | 95.00 |
| December 1957 | 100.00 |
| June 1958 | 105.00 |
| January 1961 | 125.00 |
| July 1962 | 130.00 |
| May 1963 | 150.00 |

The record also discloses that the following additional payments were made to plaintiff by defendant during the period of employment:

| | |
|---|---|
| December 1955 | $100.00 |
| December 1956 | Interest free loan |
| December 1957 | 100.00 |
| March 1959 | 557.08 |
| March 1960 | 1071.21 |
| March 1961 | 248,59 |
| June 1962 | 500.00 |
| March 1964 | 600.00 |

The nature of these additional payments is disputed, the plaintiff claiming, generally, that these payments

were, in the years made, partial or full payment of the 15 percent bonus, and the defendant claiming that they were Christmas gifts or gratuitous bonuses. There is evidence indicating that a factor of 15 percent was applied by defendant in computing said payments of $557.-08, $1,071.21, and $248.59 to plaintiff. Plaintiff testified, in effect, that he was shorted on his 15 percent bonus in those years when even dollar or no additional payments were made. Much other conflicting evidence, which we will not detail herein, was presented.

 Defendant, relying upon Peaslee v. Glass, 61 Ill 94 (1871), argues that the verdict here for plaintiff is based solely upon plaintiff's own testimony as to the terms of the employment contract, and cannot be allowed to stand in view of "defendant's counterbalancing and equally credible testimony." That this is not the law in Illinois, or even the meaning of Peaslee v. Glass, supra, was pointed out in Sears, Roebuck & Co. v Mears Slayton Lumber Co., 226 Ill App 287 (1922), where the court of review concluded that it would not be justified in setting aside a verdict as being contrary to the manifest weight of the evidence merely because a verdict for plaintiff is supported by one credible witness who is directly contradicted by an equally credible witness for defendant. It is for the jury to determine the credibility of witnesses and to attach the weight to be given their testimony. A verdict based on conflicting evidence, and approved by the trial judge, as here, will not be disturbed on appeal unless palpably erroneous, that is, unless an opposite conclusion is clearly evident. Brayfield v. Johnson, 62 Ill App2d 59, 210 NE2d 28 (Fifth District, 1965). We are satisfied, from our examination of this record, that the verdict, insofar as it finds for the plaintiff on the issue of the existence and terms of the oral contract, is founded in the evidence. The jury heard and observed the litigants while testifying and saw fit, reasonably we think, to believe plaintiff.

Defendant further argues that even if the evidence established the 15 percent bonus arrangement, that the plaintiff failed to prove the elements measuring recovery, that is, the net profit of the parts and service department for the years in question. As a corollary to this point, defendant argues that the court erred in permitting Victor Barber, a Certified Public Accountant, to testify for plaintiff.

The record discloses that plaintiff obtained a pretrial order permitting Barber to examine defendant's books and business records. Upon trial Barber testified that his firm audited defendant's books for two days, and explained that defendant's method of cost accounting by which no profit was shown in the parts and service department appeared to result from an approximate 50-50 allocation of the total operating expenses of defendant's business between the sales department and the parts and service department. Without objection, Barber testified that he had been retained by plaintiff to ascertain whether defendant's accounting methods were "equitable." Barber then testified that by applying a different method of cost accounting to defendant's records, that is, by allocating expenses to the parts department on the basis of the percentage of gross volume of business done annually by the parts and service department to the total gross volume of business done annually by both departments of defendant's business, the parts and service department would show an annual net profit, as follows:

| | |
|---|---|
| 1959 | $7,878.13 |
| 1960 | 11,716.15 |
| 1961 | 10,270.29 |
| 1962 | 310.83 |
| 1963 | 38,197.60 |
| Total | $68,373.00 |

347

He testified that in his opinion this method of cost accounting was reasonable in this case. To this total of $68,373, Barber added $14,002.32, which he claimed was an understatement in value of inventory for the year 1963, for a total net profit for this period in said department of $82,375.32. Fifteen percent of this total amounts to $12,356.30.

Defendant testified that all advertising costs, clerical salaries, costs of office supplies and maintenance, depreciation, dues and subscriptions, insurance, interest on borrowed money, taxes, licenses, telephone, rent and utilities were allocated 50-50 between the departments while 90 percent of postage was allocated to service plus 100 percent of salaries in the parts and service department and all other "direct expenses" of that department. By this method of accounting, defendant showed, for the parts and service department, a net profit for one year, and losses for all others as follows:

| 1956 | ($7,128.29) |
| 1957 | ( 7,532.54) |
| 1958 | ( 864.62) |
| 1959 | 858.48 |
| 1960 | ( 1,584.57) |
| 1961 | ( 5,803.88) |
| 1962 | (25,123.18) |
| 1963 | ( 6,884.76) |

Defendant's evidence also included a detailed list of the expenses incurred by the entire business for the years 1956 thru 1963.

The evidence regarding the gross volume of business done by the parts and service department for the years in question was not disputed. Also, the aggregate itemization and amounts of the expenses for both departments was undisputed. The real conflict was the determination of the proper method of allocating expenses between the two departments, and consequently, the

resultant net income per year for each department. Cost accounting is a subject which the ordinary juror would not be acquainted with, and testimony from a person of skill and experience in this field, as Barber was, would be helpful to the jury. Barber had firsthand knowledge of defendant's records by reason of pretrial discovery, and these records being undisputed, it was proper for Barber to give his opinion on whether the parts and service department made a net profit for the years in question. Cleary, Handbook of Illinois Evidence (Second Edition, 1963), §§ 11.3 and 11.9. Defendant also was permitted to testify on this topic. We conclude, therefore, that the amount of the jury's verdict was supported by the evidence.

■ ■ Lastly, defendant argues that it was error to refuse to give defendant's instructions 3 and 5. The trial court gave defendant's instruction 4, IPI 20.01, modified, which outlined the issues made by the pleadings. Defendant's instruction 5, not an IPI instruction, was properly refused because it reiterated, in different language, part of defendant's instruction 4. Defendant's instruction 3, also not an IPI instruction, attempted to interject into the trial reference to an implied contract. We think this instruction was properly refused as the plaintiff's claim was based on an alleged express oral contract, and was defended against on the theory that no such express oral contract had been made between the parties hereto.

For the reasons stated herein the judgment of the Circuit Court is affirmed.

Affirmed.

STOUDER, P. J. and ALLOY, J., concur.